IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

SKYLINE DESIGN, INC., an
Illinois Corporation,

              *Plaintiff*,

       **v.**

 

CARVART GLASS, INC., a New York
Corporation, and RG GLASS CREATIONS,
INC., a New York Corporation,

              *Defendants.*

**Case No. 08 CV 1656**

Judge Ronald A. Guzman
Magistrate Susan E. Cox

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6) AND 3 OF THE FEDERAL
RULES OF CIVIL PROCEDURE**

**NOW COMES** Plaintiff, Skyline Design, Inc. ("PLAINTIFF"), by and through its

attorneys, FUCHS & ROSELLI, LTD., and for its Response to the Motion to Dismiss Pursuant to

Rule 12(b)(6) and 3 of the Federal Rules of Procedure of Defendants Carvart Glass, Inc.

("CARVART") and RG Glass Creations, Inc. ("RG GLASS") (collectively known as

"DEFENDANTS" wherever applicable) (the "MOTION") and in support thereof states as follows:

**I.      INTRODUCTION**

PLAINTIFF is an Illinois corporation in the business of creating and designing unique

architectural glass etching and textured glass.   CARVART is also engaged in the business of

designing and manufacturing architectural glass design.   RG GLASS is a metal and glass

subcontractor and loosely affiliated with CARVART.   In 2003, PLAINTIFF created a two-sided

architectural glass design known as Sateen.  Subsequently, in May 2006, PLAINTIFF obtained a

Certificate of Registration for the Sateen design from the United States Copyright Office.

In the spring of 2007, PLAINTIFF learned that DEFENDANTS were infringing upon PLAINTIFF'S Sateen pattern. As a result, in June 2007, PLAINTIFF issued a cease and desist letter to CARVART requesting that CARVART immediately stop manufacturing, marketing, and selling a product identical to the Sateen pattern. Pursuant to the cease and desist letter, PLAINTIFF requested that CARVART contact PLAINTIFF to discuss its compliance with the letter. However, CARVART never responded to PLAINTIFF'S cease and desist letter.

In early 2008, PLAINTIFF received information that DEFENDANTS were still infringing upon PLAINTIFF'S Copyright. As a result, on or about March 24, 2008, PLAINTIFF filed its Complaint against DEFENDANTS seeking monetary damages and injunctive relief for copyright infringement, unjust enrichment, violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, Common Law Unfair Competition, and violation of the Illinois Deceptive Trade Practices Act (the "COMPLAINT").

In response to PLAINTIFF'S COMPLAINT, DEFENDANTS filed a Motion to Dismiss pursuant to Rule 12(b)(6) and 3 of the Federal Rules of Civil Procedure. In the MOTION, DEFENDANTS request that this Court dismiss the COMPLAINT arguing that PLAINTIFF has failed to allege any facts establishing in personam jurisdiction. See Memorandum in support of Motion to Dismiss ("MEMORANDUM"), pg. 1. Additionally, DEFENDANTS argue that in the event this Court denies their motion to dismiss, this case should be transferred to the U.S. District Court for the Southern District of New York. See MEMORANDUM, pg. 1. DEFENDANTS also seek to dismiss Counts V and VII which allege violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act arguing that PLAINTIFF has failed to plead all the elements of the claim. See MEMORANDUM, pg. 2.

In contrast to DEFENDANTS' assertions, this Court has personal jurisdiction over DEFENDANTS and PLAINTIFF has proffered claims that neither contain pleading defects nor fail to

state a claim, thereby resulting in the denial of DEFENDANTS' MOTION. In addition, the MOTION must also be denied with respect to transferring of venue as venue is proper in the Northern District of Illinois and transfer only favors DEFENDANTS and DEFENDANTS' witnesses, not PLAINTIFF. For these reasons and the reasons stated more fully below, DEFENDANTS' MOTION must be denied in its entirety.

## II.    ARGUMENT

### A.    Plaintiff's Complaint Should Not Be Dismissed Because this Court has General and/or Specific Personal Jurisdiction over Defendants.

In defeating a Rule 12(b)(6), a plaintiff must provide sufficient evidence to establish a prima facie case for personal jurisdiction. *School Stuff, Inc. v. School Stuff, Inc.,* 2001 WL 558050, citing *LFG, LLC v. Zapata Corp.,* 78 F.Supp.2d 731 (N.D. Ill. 1999). In a federal question case, this standard is met where the plaintiff demonstrates that a defendant is amendable to service of process and that bringing the defendant into court "comports with the Fifth Amendment Due Process Clause. *Id., citing LFG,* 78 F.Supp.2d at 734. In reviewing a motion to dismiss, the Court takes all jurisdictional allegations in the complaint as true unless controverted by defendants' affidavits. *Id.* Any conflicts must be resolved in favor of the plaintiff. *Id.*

A court may exercise either general or specific jurisdiction. To exercise general jurisdiction, the defendant must have conducted business that is "continuous and systematic" with the State. *Helicopteros Nacionales de Colombia, SA v. Hall,* 466 U.S. 408, 414 (1984). In this case, DEFENDANTS are domiciled in New York and have conducted business in Illinois. DEFENDANTS purchased glass from PLAINTIFF in 2006 and 2008. In fact, DEFENDANTS purchased the Sateen pattern from PLAINTIFF in 2006. See affidavit of Charles Rizzo, attached hereto and incorporated herein as **Exhibit 1**. DEFENDANTS have also admitted that they have conducted

business in Illinois.  Further, CARVART has placed national advertisements for its products and services in the Metropolis Magazine, a trade magazine circulated in the architectural design community, both in Illinois and throughout the country.  See **Exhibit #1**, ¶22.  Thus, DEFENDANTS are subject to general jurisdiction as DEFENDANTS' activities with Illinois are continuous and systematic as required by *Helicopteros.*

In the event this Court finds that general jurisdiction does not exist, this Court can exercise specific jurisdiction over DEFENDANTS. A court may exercise specific jurisdiction over a non-resident defendant if the defendant has minimum contacts with the forum.  *International Shoe Co. v. Washington,* 326 U.S. 310 (1945).  To establish specific jurisdiction, the plaintiff must show that (1) the defendant is amenable to service of process and (2) hailing defendant into court is consistent with the Fifth Amendment's due process clause.  *See School Stuff, Inc., supra, LFG,* 78 F.Supp.2d at 734 (citing *United States v. De Ortiz,* 910 F.2d 376, 381-82 (7th Cir. 1990).

Whether a defendant is amendable to service of process is governed by Illinois' long arm-statute.  The Illinois long-arm statute provides:

> "Any person, whether or not a citizen or resident of this state, who in person or through an agent does any acts herein enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from doing of any such acts: (a) the transaction of any business within this state; (b) the commission of a tortious act within this state."

*See* 735 ILCS 5/2-209(a)(1) & (2). Pursuant to 735 ILCS 5/2-209(c), a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States. *See* 735 ILCS 5/2-209(c). Because 2-209(c) authorizes personal jurisdiction to the constitutional limit, the statutory analysis collapses into a due process inquiry, and the Court need not consider whether the defendants engaged in any of the acts

enumerated in the long-arm statute. *See School Stuff, Inc., supra,* citing *LFG, LLC v. Zapata Corp.,* 78 F.Supp.2d at 735.

Personal jurisdiction comports with due process when the defendant purposely establishes "minimum contacts" with the forum state. See *LFG, LCC, supra,* at 735. The key inquiry is whether defendant purposely availed himself of the privilege of acting in the forum state, i.e., whether the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980).

In the case at bar, DEFENDANTS have the minimum contacts with Illinois to permit the Court to exercise personal jurisdiction over them. CARVART admits that it has supplied its products to Illinois customers twice in the last three years, with total sales constituting about 0.0005% of CARVART'S sales during that time period. See Exhibit A to MOTION, affidavit of Ed Geyman at pg. 2. RG GLASS admits that beginning in 2006, it made purchases from Illinois vendors comprising 0.0003% of its total sales. See Exhibit A to MOTION, affidavit of Ed Geyman at pg. 4. DEFENDANTS attempt to minimize its sales to Illinois customers and purchases to Illinois vendors. However, DEFENDANTS have purposely availed themselves of the privilege of acting in Illinois.

Sales and purchases constituting 0.0005% and 0.0003% of DEFENDANTS' total sales and purchases in Illinois goes beyond the mere presence of being in Illinois such that this Court may and should assert personal jurisdiction over DEFENDANTS. See *School Stuff, Inc., supra* at *3 ($447.09 of sales to Illinois residents goes beyond the mere Internet presence so that the Court may assert personal jurisdiction in the case). Additionally, CARVART attended the NeoCon Trade Show in Chicago in 2002 wherein it displayed its products and services with the intent of soliciting business from local as well as national and international customers. By doing business

5

in Illinois, however minimal, and soliciting business in Illinois, DEFENDANTS purposely availed themselves of the privilege of conducting activities in Illinois and, therefore should reasonably anticipate being haled into court in Illinois.  See *School Stuff, Inc., supra* *9.   As a result, DEFENDANTS have sufficient minimum contacts with Illinois to satisfy the due process inquiry. *Id.* (if defendants did not want to be haled into court in Illinois, it should never have conducted business with the residents of Illinois); see also *Westnofa USA, Inc., et al. v. British Design (U.S.A. Corp.),* 1983 WL 420 (defendants solicitation of business in Illinois, selling of its product, and sending sample into Illinois were sufficient minimum contacts to subject it to personal jurisdiction of the Court).

While DEFENDANTS argue that their sales and purchases in Illinois do not relate to PLAINTIFF'S cause of action, PLAINTIFF has alleged acts which bring DEFENDANTS under the jurisdiction of the Court.  In paragraph 26 of the Complaint, PLAINTIFF alleges that CARVART improperly and without authority caused to be created pattern designs identical to and bearing a likeness to Sateen.  See Complaint, pg. 4.  In paragraphs 30 and 34, PLAINTIFF alleges that CARVART has engaged in the business of selling Sateen under a different name of its own creation and that this pattern has been sold within the United States and upon information and belief outside of the United States.  See Complaint, pgs. 45. Further, PLAINTIFF received a sample of CARVART'S glass design from its sales representatives, which is clearly identical to PLAINTIFF'S copyright.  See **Exhibit 1**, ¶16.  Although DEFENDANTS may argue that PLAINTIFF'S COMPLAINT should contain greater specificity as to its allegations, this in and of itself does not constitute a cause to dismiss PLAINTIFF'S action.  *See Ragold, Inc. v. Ferrero, U.S.A.,Inc.*, 506 F.Supp.117, 120 (D.C. Ill. 1980).

Moreover, CARVART advertises and solicits its products and services in Illinois and throughout the country. CARVART'S national advertisements appear in the Metropolis Magazine,

a trade magazine circulated in the architectural design community, which is sold on newsstands throughout Illinois and nationwide. See **Exhibit #1**, ¶22. DEFENDANTS also transacted business with PLAINTIFF in 2006 and 2008 wherein DEFENDANTS purchased architectural glass from PLAINTIFF. See **Exhibit 1**, ¶¶12, 19. In particular, DEFENDANTS specifically purchased the Sateen design in 2006, the same design PLAINTIFF alleged DEFENDANTS infringed upon. See **Exhibit 1**, ¶12. By choosing to do business with PLAINTIFF in Illinois, DEFENDANTS have once again purposely availed themselves of the privilege of conducting activities in Illinois.

In addition to having minimum contacts with Illinois, plaintiff's claim must arise out of or relate to the defendants contacts with the forum. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472. (1985). PLAINTIFF'S claims arise from and relate to DEFENDANTS' alleged infringement of PLAINTIFF'S nationally protected copyright. As mentioned above, DEFENDANTS purchased from PLAINTIFF in 2006 the Sateen pattern. Shortly thereafter, PLAINTIFF discovered that DEFENDANTS were infringing upon PLAINTIFF'S copyright by creating a sample identical to the Sateen design and specifying it for a project. As such, DEFENDANTS alleged infringement of PLAINTIFF'S copyright has and will continue to adversely impact and injure PLAINTIFF in Illinois where DEFENDANTS and PLAINTIFF actively market and sell their products.

In completing the analysis for whether a defendant can be subject to personal jurisdiction, the Court must examine whether the exercise of personal jurisdiction conforms to "traditional notions of fair play and substantial justice." See *International Shoe Co., supra.* Defendants bear the burden of demonstrating "a compelling case that jurisdiction would be constitutionally unreasonable." *See School Stuff, Inc., supra.* at *11. As stated by Judge Guzman in *School Stuff, Inc.*, Illinois has a strong interest in adjudicating injuries such as trademark infringement in relation to corporations that are located within its borders. *Id.* "Even though it may be a burden on defendants to defend a lawsuit in Illinois, the courts have been more and more willing to

impose such a burden upon defendants due to advances in communication and transportation." *Id.* DEFENDANTS may argue that because they are New York corporations, they have isolated sales and purchases in Illinois, and they allegedly did not sell the infringing glass in Illinois, it would be unreasonable to defend themselves in Illinois. However, as previously held by Judge Guzman, these arguments alone do not present a strong reason for establishing that personal jurisdiction over them would be unreasonable. *Id.* at *12.

Based on the foregoing, DEFENDANTS have sufficient minimum contacts to be subject to personal jurisdiction by this Court. Therefore, DEFENDANTS' motion to dismiss for lack of personal jurisdiction must be denied.

**B.    Plaintiff's Complaint Should Not Be Dismissed as to Defendants For Improper Venue Because Pursuant to 28 U.S.C. §1391(c), Venue is Proper in the District in which Defendants are Subject to Personal Jurisdiction**

DEFENDANTS seek to dismiss PLAINTIFF'S COMPLAINT based upon improper venue. DEFENDANTS allege that because they do not reside in Illinois, cannot be found here, do not have a place of business here and the Court lacks jurisdiction over them, venue is improper. Unfortunately for DEFENDANTS, venue is proper.

Pursuant to 28 U.S.C. §1391(c), a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. §1391(c) (West 2008). As set forth above, this Court can exercise personal jurisdiction over DEFENDANTS. Because DEFENDANTS are subject to personal jurisdiction by this Court, the Northern District of Illinois is the proper venue for this action pursuant to §1391(c). Accordingly, DEFENDANTS' argument is without merit and their motion to dismiss based upon improper venue must be denied.

**C.    Defendants' Motion to Transfer this Case to the U.S. District Court For the Southern District of New York Should Be Denied**

Prior to transferring a case pursuant to 28 U.S.C. 1404(a), defendants must prove three elements: (1) venue is proper in the Northern District of Illinois; (2) venue is proper in the Southern District of New York, and (3) the transfer will serve the convenience of parties and witnesses and will promote the interests of justice.    See 28 U.S.C. 1404(a) (West 2008), *Vandeveld v. Christoph,* 877 F.Supp.1160 (N.D. Ill. 1995).    The party seeking to transfer venue bears the burden of establishing, by reference to a particular circumstances, that the transferee forum is clearly more convenience.  *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986).

In the present case, PLAINTIFF does not dispute that the first and second requirements in support of transferring venue are satisfied.    However, the remaining requirements, i.e. the convenience of the parties and the witnesses and interests of justice, do not support transfer of venue to the Southern District of New York.

**1.  Convenience of the Parties and Witnesses**

In considering the convenience of the parties, the Court looks to the following factors: (1) plaintiff's choice of forum; (2) the site of material events: (3) the availability of evidence in each forum; (4) the convenience to the parties of litigating in the respective forums, and (5) the convenience of the witnesses.   *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.,* 200 F.Supp.2d 941, 946 (N.D. Ill. 2002).

**(a).    Plaintiff's Choice of Forum**

Generally, plaintiff's choice of forum is entitled to substantial weight, specifically if the chosen forum is the plaintiff's home forum.  *Riddell, Inc. v. Theodore Monica, Jr., et al.,*2003 WL 21799935 *6, citing *Symons Corp. v. Southern Forming & Supply, Inc.,* 954 F.Supp.184,

186 (N.D. Ill. 1997). Here, PLAINTIFF'S choice of forum unequivocally favors PLAINTIFF. PLAINTIFF has had a presence in Illinois for over fifteen (15) years. PLAINTIFF'S corporate offices are located in Chicago, Illinois and all of its employees and officers live in the Chicago area. See **Exhibit #1**, ¶5. In addition, all of PLAINTIFF'S sales are processed through their headquarters in Illinois. See **Exhibit #1,** ¶4. Thus, this factor weighs against transferring the case to the Southern District of New York.

   **(b)    Site of Material Events**

   PLAINTIFF does not dispute that DEFENDANTS are located in New York and the discovery of the alleged infringement occurred in New York. However, PLAINTIFF'S principal place of business is in Illinois, and the injury suffered by PLAINTIFF as a result of DEFENDANTS' infringement would be felt most severely in Illinois. See *Riddell, supra.* Further, the Sateen pattern at issue was created in Illinois and documents relating to the design, manufacture and sales of the Sateen pattern are all located in Illinois. Therefore, venue is proper in the Northern District of Illinois.

   **(c)    Availability of Evidence**

   In support of its claim that this case should be transferred to New York, DEFENDANTS claim that access to physical evidence is easier in New York because it is where DEFENDANTS principal place of business. See MOTION, pg. 10. DEFENDANTS cite *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Limited Partnership* to support its claim that the location of the alleged infringer's principal place of business is often a critical and controlling consideration in determining whether to transfer a case. The same reasoning can be used to support why the Northern District of Illinois is the proper venue: PLAINTIFF'S principal place of business is in Illinois and access to physical evidence is easier in Illinois. Although this Court has transferred cases to the district where the alleged infringement occurred, this Court has also held that other

courts have pointed out, regardless of where the trial is held, all relevant documents will be collected, copied, inspected, and sent to the offices of trial counsel in both venues. *Coolsavings.com, Inc. v. IQ Commerce, Inc.,* 53 F.Supp.2d 1000, 1006 (N.D. Ill. 1999).

In the case at bar, venue is proper in the Northern District of Illinois as to all of PLAINTIFF'S documentary evidence, including its sales and alleged infringement by DEFENDANTS, is located at its headquarters in Illinois. While DEFENDANTS argue the ease of access to physical and documentary proof results in the Southern District of New York being the more convenience forum, DEFENDANTS cannot escape the fact that with the current technology and communications, it would be not be burdensome for DEFENDANTS to defend themselves in the Northern District of Illinois. See *Sitrick v. Freehand Systems, Inc.,* 2003 WL 1581741 (N.D. Ill.), citing *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980)(responding to the advances in copying technology and information storage, courts have acknowledged that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome".) Hence, this factor favors venue in the Northern District of Illinois.

**(d)     Convenience of the Parties**

The convenience of the parties does not favor transfer to the Southern District of New York. DEFENDANTS argue that PLAINTIFF'S only connection to Illinois is its residence. Unfortunately for DEFENDANTS, this argument is without merit. PLAINTIFF, its employees, and all of its records are located in Illinois. Particularly, all of PLAINTIFF'S key management employees and officers are located in Illinois. It would be more convenient for PLAINTIFF to litigate this case in Illinois. Similarly, PLAINTIFF is a small company and the absence of its witnesses, Mr. Charles Rizzo and Mark Toth, from the day-to-day operations to participate in hearings and a trial in New York would adversely impact its business. See **Exhibit 1**, ¶26.

DEFENDANTS assert that PLAINTIFF will not be unduly inconvenienced by a transfer as it has a sale office in Brewster, New York. However, this reason alone does not support a transfer of venue to the Southern District of New York. The sales office located in Brewster, New York is not PLAINTIFF'S office. In fact, this office is of PLAINTIFF'S independent sales representative that is not employed by Skyline. See **Exhibit 1**, ¶25. The fact that PLAINTIFF has independent sales office in Brewster, New York does not militate in transferring this case to the Southern District of New York. DEFENDANTS attempt to shift the inconvenience of defending this suit in the Northern District of Illinois to PLAINTIFF. *School Stuff, Inc., supra.*, citing *Coolsavings, Inc.*, 53 F.Supp.2d at 1006 (the court will not transfer a case solely because it will be more convenient for the defendant to defend the lawsuit in Arizona for this will only shift the inconvenience to the plaintiff).

### (e)      Convenience of the Witnesses

The Northern District of Illinois is the more convenient forum for potential witnesses. As set forth above, all of PLAINTIFF'S witnesses, including its officers, Charles Rizzo and Mark Toth, and employees are located in Illinois. While the existence of non-party witnesses is a factor court consider in determining whether to transfer venue, it is not the determinative factor. In this case, the Northern District of Illinois is the appropriate forum for this case to proceed.

### 2. Interests of Justice

The final component the Court examines to determine whether transfer of venue is proper is whether the transfer would serve the interests of justice. An examination of the interest of justice includes considerations such as (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies to their locale; and (4) the relation of the community to the occurrence at issue. *School Stuff, Inc., supra.* *6. Although DEFENDANTS assert that the median time to trial is shorter in the Southern District

of New York, this alone does not warrant transferring the case. PLAINTIFF'S complaint alleges violations of Illinois law, specifically the Illinois Deceptive Trade Practices Act, the Consumer Fraud and Deceptive Trade Practices Act, and Common Law Unfair Competition, in addition to violations of the Copyright Act. The District Court for the Northern District of Illinois is more likely to be familiar with the claims under Illinois law than a federal court in the Southern District of New York. See *Riddell v. Monica, et al.,* 2003 WL 21799935 *7 (N.D. Ill.); see also *School Stuff, Inc., supra* *6. Further, Illinois has a strong interest in adjudicating injuries to intellectual property rights of businesses that operate in its state. See *School Stuff, Inc., supra.* *6; *Riddell, supra.* *7. Thus, the interests of justice favor proceeding in the Northern District of Illinois.

Based on the above, the Northern District of Illinois is the proper forum for this case to proceed. Accordingly, DEFENDANTS' Motion to Transfer Venue to the Southern District of New York must be denied.

**D.  Defendants' Motion to Dismiss Counts V and VII of the Complaint Must be Denied as Plaintiff Has Stated A Claim Against Defendants for Violation of Illinois Consumer Fraud and Deceptive Business Practices Act.**

DEFENDANTS' final argument is that Counts V and VII of PLAINTIFF'S Complaint should be dismissed because PLAINTIFF has not stated a claim for relief under the Illinois Consumer Fraud and Deceptive Business Practices Act. Specifically, DEFENDANTS claim that the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") protects consumers and PLAINTIFF cannot allege consumer protection concerns because the parties' customers are professional contractors and architects. See Motion, pg. 13.

Under the ICFA, a consumer may be a corporation or trust. *See* 815 ILCS 505/1(c) (West 2008). To make a case under the ICFA, the plaintiff must prove that the defendant (1) engaged

in a deceptive act or practice, (2) with the intent that a party (including the consumer) relies on the deception, (3) while engaged in trade or commerce. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 163 F.3d 967, 970 (7th Cir. 1999).

Here, PLAINTIFF has stated a cause of action for violation of the ICFA. DEFENDANTS are consumers of PLAINTIFF'S products based on their repeated purchases, including the copyrighted design, from PLAINTIFF. CARVART engaged in a deceptive act by creating a sample of glass that is identical to PLAINTIFF'S copyright and marketing it as its own. By creating and marketing a glass pattern identical to PLAINTIFF'S copyright, CARVART intended that the end user, i.e. the owner of the project for whom the glass was specified for, believe and rely on that the glass pattern was created by and belonged to CARVART. Further, CARVART allegedly marketed and specified its infringing glass pattern while engaged in the business of marketing and selling its products and services to various entities. By marketing and/or specifying the infringing glass, CARVART was and is deceiving the end user into believing that the glass pattern was in fact CARVART'S creation. The end user, whether it is Hyatt or another entity, has the right to know where the glass they are purchasing for their building originated from. Moreover, the architects and contractors are not the actual consumers of PLAINTIFF'S products. The architects and professional contractors are agents of the owner of the project, i.e. Hyatt Hotel, and specify the glass on behalf of the owner of the project. The owner of the project is the actual consumer of PLAINTIFF'S products as it is the one who benefits from the use of the glass. As a result, PLAINTIFF has stated a cause of action for violation of the ICFA and DEFENDANTS' motion to dismiss Counts V and VII must be denied.

## III.    CONCLUSION

As fully stated above, DEFENDANTS transacted business and solicited business in Illinois giving them sufficient minimum contacts for this Court to exercise personal jurisdiction over

them. Because this Court has personal jurisdiction over DEFENDANTS, the Northern District of Illinois is the proper venue. Additionally, this case should not be transferred to the Southern District of New York because it is only convenient for DEFENDANTS. PLAINTIFF would be unduly burdened since its witnesses and all of its evidence is located in Illinois. Moreover, the interests of justice are better served in Illinois, since it is more familiar with the claims under Illinois law and has more interest in adjudicating injuries to intellectual property rights of businesses within Illinois. Finally, DEFENDANTS' motion to dismiss Counts V and VII must be denied because PLAINTIFF has stated a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. For these reasons, DEFENDANTS' motion to dismiss PLAINTIFFS' action or in the alternative, to transfer venue to the Southern District of New York must be denied.

Respectfully Submitted,

SKYLINE DESIGN, INC. *Plaintiff*

By:    \s\ Richard C. Perna
              One of Its Attorneys

Richard C. Perna - ARDC# 06193236
Tejal S. Desai- ARDC# 6280834
FUCHS & ROSELLI, LTD.
440 West Randolph Street, Suite 500
Chicago, Illinois 60606
Tel: (312) 651-2400
Fax: (312) 651-2499

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

SKYLINE DESIGN, INC., an
Illinois Corporation,

Plaintiff,

v.

CARVART GLASS, INC., a New York
Corporation, and RG GLASS CREATIONS,
INC., a New York Corporation,

Defendants.

Case No. 08 CV 1656

Judge Ronald A. Guzman
Magistrate Susan E. Cox

## AFFIDAVIT OF CHARLES RIZZO

Affiant, Charles Rizzo, an adult over the age of eighteen years, being first duly sworn upon oath, does solemnly swear or affirm that if called to testify in the above-captioned case, he would testify based on his own personal knowledge as follows:

1.     I am the President and Chief Executive Officer of Skyline Design ("Skyline"). I have held this position since 1983.

2.     Skyline Design is engaged, among other things, in the business of creating and designing unique architectural glass etchings, textured glass, and opaque surfaced glass. Skyline has a wide variety of architectural glass patterns and creates custom designs for its clients.

3.     Skyline markets its products to architects and designers, who specify architectural glass products for its clients.

4.     Skyline is an Illinois corporation with its principal place of business in Chicago, Illinois. It has administrative offices, a design office, and factory located in Chicago, Illinois. All of Skyline's business, including all its sales, is conducted from the office in Chicago, Illinois.

5.     Skyline has approximately 100 employees. All of Skyline's employees work out of the Chicago office. All of Skyline's employees live in Chicago, Illinois and its surrounding



suburbs.  Skyline has independent sales representatives in various regions throughout the United States, including Chicago, Los Angeles, San Francisco, and New York, who are not employees of Skyline.

6.     All of Skyline's records are located in Chicago, Illinois.  Skyline has no mailing address, no telephone number, and no bank account in New York.  Skyline has no employees, no real estate and no offices in New York.  Skyline is not licensed or qualified to do business in New York.

7.     Skyline markets and supplies its architectural glass to customers throughout the United States.

8.     Skyline participates and attends the NeoCon Trade Fair.  During the NeoCon Trade Fair, various glass designers and manufacturers display their products and services, with the purpose of generating business and soliciting sales to potential local, national, and international customers.

9.     In 2003, Skyline created a two-sided decorative architectural glass etching which it labeled as "Sateen".

10.     On or about May 9, 2006, Skyline obtained a Certificate of Registration for the Sateen pattern from the United States Copyright Office.  Skyline's certificate of registration is current and is valid.

11.     Since 2003, Skyline has continuously manufactured the Sateen pattern since its creation in 2003 and continues to do so since its registration.

12.     In 2006, R.G. Glass, on behalf of Carvart, purchased glass from Skyline.  In particular, R.G. Glass placed orders with Skyline for the purchase of the Sateen pattern.  **Exhibit A** is a true and accurate copy of a purchase order by Skyline to R.G. Glass for the purchase of the Sateen pattern.

13.     Subsequently to the orders by R.G. Glass, on behalf of Carvart in 2006, neither Carvart nor R.G. Glass purchased any glass from Skyline in 2007.

14.     In the spring of 2007, Skyline discovered that Carvart was infringing on its Sateen pattern.   Upon discovering Carvart's infringement, Skyline issued a cease and desist letter on June 15, 2007.   In its cease and desist letter, Carvart was asked to contact Skyline to discuss its compliance with the letter.

15.     Carvart never responded to Skyline's cease and desist letter of June 15, 2007.

16.     In March 2008, Skyline received a sample of glass which was virtually identical to Skyline's copyrighted Sateen pattern.   The sample had a label affixed to it containing Carvart's name and part number 3147.

17.     The sample of glass was not a sample of Skyline's pattern as the sample did not fit Skyline's standard sample size form of "10 x 10" or 4"x 4".

18.     Subsequently, Skyline filed the instant action against Carvart and RG Glass.

19.     After filing suit, in April and May 2008, RG Glass, on behalf of Carvart, returned to purchasing glass from Skyline.   **Exhibit B** is true and accurate copies of purchase orders and/or quotes from April and May 2008 by Skyline to R.G. Glass for the purchase of the glass.

20.     Carvart and RG Glass are subject to the jurisdiction of the District Court in the Northern District of Illinois.  Carvart and RG Glass have conducted business in Illinois.  Carvart, through RG Glass, purchased glass, particularly, the Sateen pattern, from Skyline in 2006. Carvart and RG Glass continue to do business in Illinois in 2008 by having purchased glass from Skyline in April and May.

21.     Carvart has also sold its products to Illinois customers over the past three years.

22.     Like Skyline, Carvart attended the NeoCon Trade Fair in 2002.  In attending the NeoCon Trade Fair in Chicago, Carvart, like any other entity who attends the trade fair,

displayed its products and services to generate business and solicit sales from local, national, and international customers.

23.    Carvart also advertises its products and services in trade magazines, including Metropolis Magazine, which is well known and circulated in the architectural design community throughout the United States, including Illinois.  **Exhibit C** is a true and accurate copy of the ads placed by Carvart in the Metropolis Magazine in April 2005, May 2006, January 2007, May 2008, and June 2008.   The Metropolis Magazine is circulated on a monthly basis and Carvart has repeatedly advertised its products and services in the Metropolis over the years.

24.    I am the person who has the most overall knowledge concerning Skyline's business activities, specifically those involved in this case.  I live in Chicago and work in our Chicago office.

25.    In addition to me, the other employee that has knowledge about Skyline's business activities and the alleged infringement by Carvart is Mark Toth, the Vice President of Architectural Glass Sales, who works in our Chicago office and lives in the Chicagoland area.

26.    The sales office located in Brewster, New York is not a Skyline office.  The office is of Skyline's independent sales representative who is not an employee of Skyline.  The office does not contain any documents regarding Skyline's sales and business activities.

27.    If this case is not dismissed, allowing the case to remain pending in the Northern District of Illinois would be more convenient for Skyline rather than transferring it to the Southern District of New York.  Skyline is a small company and its key management employees, which include myself and Mark Toth, are actively and intimately involved in the day-to-day operations, such that our absence would adversely impact the business.  The adverse impact to the business would be minimized if this case remains pending in Chicago.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER, AFFIANT SAYETH NAUGHT.

_____
Charles Rizzo

SUBSCRIBED and SWORN to
before me this 7th day
of July , 2008.

_____
Notary Public

OFFICIAL SEAL
RALPH MARINO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/16/12

RG Glass Creations, Inc.

180 Varick Street, Suite 1218
New York, NY 10014



# Purchase Order

| Date | P.O. No. |
|------|----------|
| 3/24/2006 | 5432 |

| Vendor | Ship To |
|--------|---------|
| Skyline Design<br>1240 N. Homan Avenue<br>Chicago, IL 60651 | RG Glass Creations, Inc.<br>76 Van Dyke Street<br>Brooklyn NY 11231 |

| Due Date |
|----------|
| 3/27/2006 |

| Item | Description | Qty | Rate | Customer | Amount |
|------|-------------|-----|------|----------|--------|
| Architectura... | Please apply Skyline "Sateen Option C" onto out 1/2" thick clear laminated safety glass with three holes on each. All glass is out of square. All patterns to run vertical. See attached sketch for typical pattern placement. (Please note that all glass is polished on 3 sides and seamed on 1 side with holes) | | | | |
| Architectura... | 33" X 24 7/8" (Room #1707-8b) | 1 | | Herman Mi... | |
| Architectura... | 33" X 25 3/4" (Room #1707-9b) | 1 | | Herman Mi... | |
| Architectura... | 33" X 26 5/8" (Room 1707-10b) | 1 | | Herman Mi... | |
| Architectura... | 33" X 28 3/8" (Room 1707-11b) | 1 | | Herman Mi... | |
| Architectura... | 33" X 28 3/8" (Room 1707-12b) | 1 | | Herman Mi... | |
| Architectura... | 33" X 30 1/8" (Room 1707-13b) | 1 | | Herman Mi... | |
| Architectura... | 33" X 31" (Room 1707-14b) | 1 | | Herman Mi... | |
| Architectura... | 35 7/8" X 31 7/8" (Room 1707-15b) | 1 | | Herman Mi... | |
| Architectura... | 35 1/4" X 29 7/8" (Room 1708-a) | 1 | | Herman Mi... | |
| Architectura... | 32 11/16" X 29 1/2" (Room 1708-b) | 1 | | Herman Mi... | |
| Architectura... | 32 11/16" X 28 7/8 (Room 1708-c) | 1 | | Herman Mi... | |
| Architectura... | 32 11/16" X 27 7/8" (Room 1708-c) | 1 | | Herman Mi... | |
| Architectura... | 35" X 27 1/4" (Room 1708-e) | 1 | | Herman Mi... | |

| | Total | | 50.00 |
|--|-------|--|-------|

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 718 855 4457 X602 | 718 855 4456 | donnat@carvart.com | www.carvart.com |



EXHIBIT

A

# RG GLASS CREATIONS, INC

76 Van Dyke Street
Brooklyn, NY 11231
Tel: 718-855-4457 x602
Fax:718-855-4456
E-mail: donnal@carvart.com

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 4/18/2008 | 2687 |

| Vendor | Ship To |
|--------|---------|
| Skyline Design<br>1240 N. Homan Avenue<br>Chicago, IL 60651<br>Attn: Geralynn | RG GLASS CREATIONS, INC.<br>76 Van Dyke Street<br>Brooklyn, NY 11231 |

*Received w/ dup check*

| rms | Due Date | Account # | Expected |
|-----|----------|-----------|----------|
| | 4/18/2008 | | 4/18/2008 |

| Item | Description | Qty | Rate | Customer | Amount |
|------|-------------|-----|------|----------|--------|
| Temp/ Ven | Using our 1/2" thick starphire tempered glass (glass will be delivered to you from Old Castle Glass in Bensenville) holes & edgework, please apply pattern with weaves and textures, Option C @ $34.74 per square foot as per id #B29245 attached. Also see sketches attached SK-1 thru SK-6.(Label each piece) | | | | |
| Temp/ Ven | 38 9/16" x 96 7/16" polish 2 longs and seam all others. (Label #19) | 6 | 937.98 | Vicis Capit... | 5,627.88 |
| Temp/ Ven | 18 9/16" X 96 7/8" polish 2 longs and seam all others. (Label #8) | 1 | 486.36 | Vicis Capit... | 486.36 |
| Temp/ Ven | 35 3/4" X 88 3/8" polish 2 longs with two holes as per SK-1 (Label #19) | 1 | 799.02 | Vicis Capit... | 799.02 |
| Temp/ Ven | 35 3/4" X 94 3/4" polish edges on all with 2 hinge cut outs and two holes as per SK-2 (Label #8) | 1 | 833.76 | Vicis Capit... | 833.76 |
| Temp/ Ven | 23 11/16" X 96 1/2" polish 2 long and seam all others with one cut out as per SK-3 (Label #7) | 1 | 555.84 | Vicis Capit... | 555.84 |
| Temp/ Ven | 35 3/4" X 94 1/2" polished edges on all with 2 hinge cut outs and two holes as per SK-4 (Label #7) | 1 | 833.76 | Vicis Capit... | 833.76 |

**Total**

EXHIBIT
B

# RG GLASS CREATIONS, INC

76 Van Dyke Street
Brooklyn, NY 11231
Tel: 718-855-4457 x602
Fax:718-855-4456
E-mail: donnal@carvart.com

# Purchase Order

| | Date | P.O. No. |
|---|---|---|
| | 4/18/2008 | 2687 |

| Vendor | Ship To |
|---|---|
| Skyline Design<br>1240 N. Homan Avenue<br>Chicago, IL 60651<br>Attn: Geralynn | RG GLASS CREATIONS, INC.<br>76 Van Dyke Street<br>Brooklyn, NY 11231 |

| Terms | Due Date | Account # | Expected |
|---|---|---|---|
| | 4/18/2008 | | 4/18/2008 |

| Item | Description | Qty | Rate | Customer | Amount |
|---|---|---|---|---|---|
| Temp/ Ven | 35 3/4" X 88 7/8" polish 2 longs with 2 holes as per SK-5 (Label #1) | 1 | 799.02 | Vicis Capit... | 799.02 |
| Temp/ Ven | 31 1/4" X 97" polish one1 long and miter one long and seam all others as per SK-6 | 1 | 764.28 | Vicis Capit... | 764.28 |
| Arch. Glas... | artwork/set up | | 500.00 | Vicis Capit... | 500.00 |
| Shipping/... | Crating charges | | 300.00 | Vicis Capit... | 300.00 |
| Shipping/... | Delivery Charges | | 862.73 | Vicis Capit... | 862.73 |

| | Total | $12,362.65 |
|---|---|---|

# RG GLASS CREATIONS, INC

76 Van Dyke Street
Brooklyn, NY 11231
Tel: 718-855-4457 x602
Fax:718-855-4456
E-mail: donna1@carvart.com

*To Fred Hodges 5/8 FH 6/30/163*

*as Per Conversation*

*COPY*

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 5/8/2008 | 2783 |

| Vendor | Ship To |
|--------|---------|
| Skyline Design<br>1240 N. Homan Avenue<br>Chicago, IL 60651 | RG GLASS CREATIONS, INC.<br>76 Van Dyke Street<br>Brooklyn, NY 11231 |

| Terms | Due Date | Account # | Expected |
|-------|----------|-----------|----------|
|  | 5/8/2007 |  | 5/8/2007 |

| Item | Description | Qty | Rate | Customer | Amount |
|------|-------------|-----|------|----------|--------|
| Temp/ Ven | Skyline Design to custom apply Weaves & Textures Option C #2-0.37 on our 1/2" thick starphire tempered glass that will have edgework as per below (Coming to your from Old Castle in Bensenville).  Label Each tag with apartment #'s.  See attached quote #0039163. |  |  |  | 0.00 |
| Temp/ Ven | 17 11/16 x 108 1/16 Seamed edges on all (#74A) | 1 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 38 11/16x 108 1/16 polish 2 long & seam all others (#75) | 1 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 38 5/8x 108 1/16 polish 2 long & seam all others (#75) | 2 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 38 3/4 x 108 1/16 polish 2 long & seam all others (#76) | 2 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 39 3/8 x 108 1/16 polish 2 long & seam all others (#69) | 2 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 39 5/16 x 108 1/16 polish 2 long & seam all others (#69) | 3 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 17 11/16x 108 1/16 Seamed edges on all (#77) | 1 | 0.00 | Niche Med... | 0.00 |
| Temp/ Ven | 17 11/16x 108 1/16 Seamed edges on all (#79A) | 1 | 0.00 | Niche Med... | 0.00 |

| Total |
|-------|

# RG GLASS CREATIONS, INC

76 Van Dyke Street
Brooklyn, NY 11231
Tel: 718-855-4457 x602
Fax:718-855-4456
E-mail: donna1@carvart.com

# Purchase Order

| Date | P.O. No |
|------|---------|
| 5/8/2008 | 2783 |

| Vendor | Ship To |
|--------|---------|
| Skyline Design<br>1240 N. Homan Avenue<br>Chicago, IL 60651 | RG GLASS CREATIONS, INC.<br>76 Van Dyke Street<br>Brooklyn, NY 11231 |

| Terms | Due Date | Account # | Expected |
|-------|----------|-----------|----------|
|  | 5/8/2007 |  | 5/8/2007 |

| Item | Description | Qty | Rate | Customer | Amount |
|------|-------------|-----|------|----------|--------|
|  | Pattern is vertical<br>Where seamed edges, it's captured on 4 sides in the frame, where it's PE, it's captured top and bottom only, silicone butt joint on the vertical<br><br>This PO replaces po#2702 from 4/21/08 |  |  |  |  |
|  | **Total** |  |  |  | $0.00 |

Page 2

QUOTE

**SKYLINE DESIGN**
1240 N Homan
Chicago, IL 60651
Phone: (773) 278-4660  Fax: (773) 278-3548

Quote No:      0039163
Quote Date:    4/14/2008
Salesperson:   Bob Lefferts
Sales Support:

**BILL To:**

RG Glass Creations Inc
180 Varick Street
Suite 1218
New York, NY  10014

Phone: (212) 675-0030    FAX: (212) 675-8175

**SHIP TO:**

RG Glass Creations Inc
180 Varick Street
Suite 1218
New York, NY  10014

Phone:

| CONTACT | CUST PO | PAYMENT TERMS | SHIPPING METHOD |
|---|---|---|---|
| Phil Chin | | Deposit/Prepaid | Fairrington Freight |
| Project Name: | | Architect | |
| Niche Media | | Inarch LLC, New York, NY | |

| PROJECT DESCRIPTION | UNIT PRICE | TAX |
|---|---|---|
| Skyline Design to custom apply Weaves & Textures design to CLIENT or SKYLINE SUPPLIED 1/2" tempered starphire glass per architect's and designer's layout and specifications as listed below. Pricing is based on 251-1000 square feet. | | |
| Design to be Sateen Option C (Skyline supplied glass). Edges are polished. | 61.43 per SQFT | Y |
| Polishing: | 0.62 per INCH | Y |
| Set up fee for total order if Skyline supplies glass: | 750.00 | N |
| Design to be Sateen Option C (Client supplied glass). Edges are polished. | 31.96 per SQFT | Y |
| Set up fee for total order if Client supplies glass: | 500.00 | N |
| Crating fee: | 300.00 | N |
| Shipping fee: | 821.22 | N |
| Shipping and crating charges are based on 338 sq.ft. (2,704 lbs.) | | |
| *PAYMENT TERMS | | |
| * A 50% deposit is required on all orders prior to the purchase and/or fabrication of any glass, whether Skyline or client supplied. Payment in full is due prior to shipment, pickup or installation. | | |
| * Any estimated lead time is based on receipt of all required information, approvals, and 50% deposit. | | |
| * Skyline Design can accept deposit payments via Visa or MasterCard. Please contact our Accounts Receivable department for a Credit Card Authorization Form. At this time, final payments cannot be made by credit card. | | |
| * Skyline Design can accept deposit or final payments by wire transfer for an additional $20.00 fee per transfer. Please contact our Accounts Receivable department for additional information. | | |
| * All returned checks are subject to a $25.00 fee. | | |
| PRICE CALCULATION INFORMATION | | |
| * All pricing based on sizes rounded up to the next even inch with a 3 square foot minimum per panel. | | |
| * Square footage per lite is rounded to the nearest whole number. | | |
| * Pricing is based on entire cut glass size. | | |
| * Skyline Design or Client to supply all glass. | | |
| * Client to provide exact cut glass sizes and layout in writing. | | |
| * Glass pricing does not include delivery or installation unless otherwise noted. | | |

Please review the above project description carefully and indicate your acceptance of all the terms and conditions on this page by initialing in the space provided below. You may accept this quote by signing and dating your acceptance in the space provided on the last page of this document. Alterations or deviations from the project description described above may result in an increase in the prices quoted and will only be accepted in writing. I reviewed and accept the terms on this page_____

Thank you for your continued business and support.

Continued on next page

# QUOTE

**SKYLINE DESIGN**
1240 N Homan
Chicago, IL 60651
Phone: (773) 278-4660  Fax: (773) 278-3548

| | |
|---|---|
| Quote No: | 0039163 |
| Quote Date: | 4/14/2008 |
| Salesperson: | Bob Lefferts |
| Sales Support: | |

BILL To:

RG Glass Creations Inc
180 Varick Street
Suite 1218
New York, NY 10014

Phone: (212) 675-0030    FAX: (212) 675-8175

SHIP TO:

RG Glass Creations Inc
180 Varick Street
Suite 1218
New York, NY 10014

Phone:

| CONTACT | CUST PO | PAYMENT TERMS | | SHIPPING METHOD |
|---|---|---|---|---|
| Phil Chin | | Deposit/Prepaid | | Fairrington Freight |
| Project Name: | | Architect | | |
| Niche Media | | Inarch LLC  New York, NY | | |

| PROJECT DESCRIPTION | UNIT PRICE | TAX |
|---|---|---|
| *SHIPPING COMMENTS | | |
| * Shipping cost reflects shipment via standard freight service only (unloading, unpacking, etc. are not part of standard service). Client must notify Skyline prior to shipping if destination cannot handle this type of delivery. | | |
| * Services such as liftgate delivery, inside delivery, and delivery to a job site will be an additional charge. | | |
| * Shipping costs are based on direct shipping to your shop unless otherwise noted. | | |
| * Shipping reference #60831.04142008.2704 | | |
| * Shipping cost reflects one shipment via regular ground transport unless otherwise noted. Multiple or expedited shipments will incur additional charges. | | |
| * Orders shipped COD will incur an 8% fee based on the COD amount, subject to a minimum charge of $50.00. | | |

Please review the above project description carefully and indicate your acceptance of all the terms and conditions on this page by initialing in the space provided below. You may accept this quote by signing and dating your acceptance in the space provided on the last page of this document. Alterations or deviations from the project description described above may result in an increase in the prices quoted and will only be accepted in writing. I reviewed and accept the terms on this page_____.

Thank you for your continued business and support.

                Continued on next page

# QUOTE

**SKYLINE DESIGN**
1240 N Homan
Chicago, IL 60651
Phone: (773) 278-4660  Fax: (773) 278-3548

↓

| | |
|---|---|
| Quote No: | 0039163 |
| Quote Date: | 4/14/2008 |
| Salesperson: | Bob Lefferts |
| Sales Support: | |

**BILL To:**

RG Glass Creations Inc
180 Varick Street
Suite 1218
New York, NY  10014

Phone: (212) 675-0030    FAX: (212) 675-8175

**SHIP TO:**

RG Glass Creations Inc
180 Varick Street
Suite 1218
New York, NY  10014

Phone:

| CONTACT | CUST PO | PAYMENT TERMS | | SHIPPING METHOD |
|---|---|---|---|---|
| Phil Chin | | Deposit/Prepaid | | Fairrington Freight |
| Project Name: | | Architect | | |
| Niche Media | | Inarch LLC, New York, NY | | |

| PROJECT DESCRIPTION | | UNIT PRICE | TAX |
|---|---|---|---|
| | | | |

**GLASS TOLERANCES:**
1/8" - 1/4" up to 60" (+/-1/16");
3/16" - 1/4" - 60" to 90" in size (+1/16",-1/8");
3/8"-3/4" all sizes (+/-1/8")
Thickness / Quality per ASTM C1036
Bow & Warp per ASTM C1048.

**\*\*\*NOTICE\*\*\*** YOU MUST NOTIFY SKYLINE DESIGN OF ANY DEFECTS IN GLASS AND/OR PATTERN WITHIN THREE (3) BUSINESS DAYS OF RECEIPT OF GLASS AND PRIOR TO GLASS INSTALLATION. SKYLINE DESIGN WILL NOT BE RESPONSIBLE FOR LABOR COSTS TO REMOVE AND REINSTALL DEFECTIVE GLASS.

Orders not picked up by the client within 30 days of notification of completion by Skyline Design will be subject to storage charges. Charges are based on square footage with a minimum charge of $150.00 per month.

**GENERAL TERMS and CONDITIONS**
Orders that are cancelled by the client, for any reason, are subject to charges for materials and/or labor incurred to the date of cancellation.
Skyline Design does not recommend the application of any type of liquid adhesive to etched and/or painted surfaces, this will void your warranty.
On replacement pieces or reorders, an exact color match to the original cannot be guaranteed due to inherent variations in production runs.
All glass fabrication must meet ASTM standards.
The Skyline Design Terms & Conditions Acknowledgement is hereby included in the general terms of this order.

Please direct any questions, request for additional quotes, or samples to your Skyline Customer Support Representative:
**Name:** Christine Mekhitarian
**email:** christine.m@skydesign.com
**Phone:** (773) 278-4660  Ext: 258
**Fax:** (773) 278-3458

**ACCEPTANCE:**
I accept the terms and conditions of this quote. I agree that any material alterations or deviations to the project as described may result in increased price and will only be accepted in writing. I am not placing any reliance on any verbal discussions not explicitly detailed in this document.

_____     _____     _____
Signature                                      Date                                       PC Number




# SEE THE WORLD THROUGH ROSE COLORED GLASS

OR ONE OF THE OTHER 4, 9 ,53 VIRTUAL SAMPLE GLASS OPTIONS AT CARVART.COM

...t proudly introduces Virtual Sample, the new standard in online glass sampling. Virtual Sample is a glass design studio where you ...practically endless choices of color, texture, surface treatment, pattern, film, fabric and organic interlayer options. Guesswork and ...ng have been eliminated from the process -- when you're done designing all it takes is a quick click to order your physical sample. ...use of Carvart's proprietary technology, sampling at this level has never been more precise, or easier to use. ...on and see for yourself. At Carvart.com, you are the glass designer.


 **ICFF**

VISIT CARVART AT ICFF, Booth #622, Jacob Javits Center, NYC, May 14-17, 2005    Circle 167

# CARVART
www.carvart.com



Arakawa Hanging Systems supplies quick-release cable grippers. With the Arakawa Gripper system, your displays are secure and locked in place but quickly adjustable at will. The mechanical grip fastens to the cable, also making set screws and damaged cable.

Let us help you build your next project, call toll free, 888-ARAKAWA

## Arakawa

Circle 37



Circle 45



the chairfactory
243 Bowery  New York, NY 10012
1.212.941.8700
info@thechairfactory.com
www.thechairfactory.com

Circle 212




(00) 311-0681
pesusa.com
pesusa.com

ING...
-INOX
KTOP

ts.
ct

ll
a
ler



## BLACKMAN
N E W   Y O R K
Fine Plumbing Products & Architectural Hardware Since 1921
Come visit us or call for a private consultation.
85 Fifth Avenue (at 16th St.) 2nd Floor, NYC
212-337-1000 • www.BlackmanNY.com

Circle 143



Design it, see it, get it.

CARVART
Call us toll free at 888 278 4492

**Carvart** is a leading manufacturer of laminated glass using state of the art technology. Look for it in our sales, service, and internet portfolio of glass products.

www.carvart.com

Visit our showroom:
180 Varick Street, Suite #218
New York, NY 10014

Circle 167



Hardware
Bathroom
Washroom
Handrail
Wardrobe
Signs

d line  north america
www.dlineusa.com

Henrik Hall Inc.
410 Park Avenue, 15 Floor
New York, NY 10022
Tel     +1 877 354 0362 toll free
Fax    +1 510 759 5684
E-mail  north.america@dline.com
Internet  www.dline.com

Circle 60

# *Alias*

Street
, NY 10022
877 254 2788
iosUSA.com

air
: Marco Acerbis



le 156



## VISTAWALL GLASS
### frameless glass doors

Design it, see it, get it.

• Exposed stainless architectural hardware

• Quiet, minimalist construction

• Versatile applications

• Result: redefines illumination uninhibited

**BARTELS**
your direct source for exceptional doors and fine architectural hardware

DC3714 Suite 2655
1855 Griffin Road
Dania Beach, Florida
tel: 954-924-5177
fax: 954-924-0133
toll free: 866-Bartels
www.bartelsusa.com

Circle 299



## CARVART
Call us toll free at 888 278 1452

**Carvart** is a leading manufacturer of fine frameless glass using state of the art technology to ensure a safe, secure and lasting architectural glass product.

www.carvart.com

Design and specify your glass entrance online with our interactive program.

Visit our showroom
180 Varick Street, Suite 1210
New York, NY 10014

Circle 167



# Highway

DAUPHIN
www.dauphin.com

Circle 63



# COUNTERBALANCE
## SCULPTURE BY BRIAN MACKIN

architectural scale
dramatic accents

t 206 780 9997   f 206 780 2676
counterbalancesculpture.com

Circle 48

## ATION

NAN™ tex

AN hill

ox-ljh.com

195

## BR-111 exotic hardwood flooring

A premium-quality engineered hardwood floor, Triângulo® Engineered features a thick-sawn wear layer and is available in 7 products. Triângulo® is finished with crystal-clear aluminum oxide and is rated for residential or commercial installation.

**Get exotic at br111.com
or call 800.525.2711**

Circle 47

130



## DOON™
PATTERNS FOR INDUSTRY
www.studiodoon.com

Circle 286

METROPOLIS January 2007



Panels

More. Louise in Matte Black, a new pattern influenced by the found-object sculptures from one of the twentieth century's most important artists.

www.BNind.com    800.350.4127

Circle 44



10"
PORTACHAT



Berkeley Mills

877-426-4557 / www.berkeleymills.com

Circle 19



Circle 45



Can your kitchen save the planet?

bazzèo

Circle 177



BLACKMAN
Fine Plumbing Products Since 1921
www.blackman.com
1-800-843-2695

Circle 143



CLEAR THE WAY FOR YOUR IMAGINATION

TRADITIONAL CRAFTSMANSHIP MEETS 21ST CENTURY TECHNOLOGY

Carvart is a leading architectural glass manufacturer in the heart of New York City

Choose from an unlimited palette of colors and product combinations, thanks to our computerized sampling process and dynamic online preview

Please visit our website or call for samples of our latest products

www.carvart.com
888 228 4452



Circle 187





## TURN THE ONE WAY YOU



**Carlisle**
Wide Plank Floors



New



Where work is going.

coalesse.com

CASCADE COIL DRAPERY
www.cascadecoil.com
800.999.2645

Circle 39    Circle 18    Circle 48





brookside veneers

we know you.

**Alpiwood** PF
Pre-finished Ve...

your standards are high.

... Brookside Veneers
... ... Alpiwood PF, the best
... ... ... ... veneers available


brookside veneers, ltd.
104 M... Road, ... IL 60...
p. 800.40...111 • f. 630 ... ...
info@b... ... ...
www.veneers.com

Circle 24


CLEAR THE WAY FOR
YOUR IMAGINATION



... ... CRAFTSMANSHIP MEETS 21ST
... ...RY TECHNOLOGY

Carvart is a leading architectural glass
manufacturer in the heart of New York City.

Choose from an unlimited palette of
colors and product combinations,
thanks to our computerized sampling
process and dynamic online preview.

Please visit our website or call
for samples of our latest products.

...@carvart.com
...4450

Circle 167







*Sheer Embossed Crystal*

CHARLES LOOMIS, INC.
425.823.4560 / 800.755.0471
www.charlesloomis.com



Circle 247